**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

**OSCAR REYES,**
*for himself and on behalf of all
similarly situated individuals*,

    **Plaintiff,**

v.

**MILLICOM AMERICAS, LLC,
and
IDT TELECOM, INC. d/b/a BOSS
REVOLUTION,**

    **Defendants.**

CASE NO. _____

## CLASS COMPLAINT

COMES NOW Plaintiff, OSCAR REYES, on behalf of himself and all similarly situated individuals, and alleges the following claims against Millicom Americas, LLC, and IDT Telecom, Inc. doing business as Boss Revolution (together "Defendants"):

### I.  INTRODUCTION.

1. This action is brought for violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, et seq. ("TCPA"), arising out of multiple Short Message Service ("SMS," more commonly known as "text" messages) solicitations made by or on behalf of Defendants to Plaintiff's cell phone number using an automatic telephone dialing system. Plaintiff also alleges an individual claim against the Defendants for violations of the Virginia Consumer Protection Act ("VCPA"), Va. Code § 59.1-196, et seq.

## II.   SUBJECT MATTER JURISDICTION AND VENUE.

2. This court has original jurisdiction of this civil action as one arising under the laws of the United States. *See* 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claim.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants victimized Plaintiff on his cell phone line within this District and Division.

4. Venue is also proper in this Court under 28 U.S.C. § 1391(b) as Defendants regularly do business in the District and Division, are subject to this Court's personal jurisdiction with respect to this civil action in the District and, as such, "reside" in this District.

5. At the time of original filing of this lawsuit, Plaintiff maintained all of the documents relevant to this dispute at his home in Alexandria, Virginia.

## III.   PARTIES AND PERSONAL JURISDICTION.

6. Plaintiff Reyes is a consumer as protected by the TCPA and VCPA.

7. Defendant Millicom Americas LLC is a Florida limited liability company with its principal place of business located at 396 Alhambra Circle, Suite 100, Coral Gables, Florida 33134.

8. Defendant IDT Telecom, Inc. ("IDT Telecom") is a New Jersey corporation with its principal place of business located at 520 Broad St., Newark, NJ 07102. It does business under multiple brand names, including Boss Revolution. Specifically, IDT Telecom describes Boss Revolution as a service that "helps immigrants and the under-banked to conveniently and affordably share resources with friends and family around the world."[1]

---

[1] http://www.idt.net/our-brands.html (last visited March 23, 2017).

9. At all times pertinent, Defendants were and are in the business of providing text messaging services between consumers in the United States and individuals in foreign countries for a fee.

10. Defendants transact business throughout the United States, including in Virginia and specifically in this District and Division.

11. In addition to transacting business in Virginia, Defendants contract to supply services or things in Virginia, including in this District and Division.

12. Defendants regularly do or solicit business, or engage in other persistent courses of conduct, or derive substantial revenue from goods used or consumed or services rendered in the Commonwealth of Virginia, including in this District and Division.

13. In addition, through their acts in making or causing to be made unsolicited text messages to Plaintiff on his cell phone using an autodialer, Defendants caused tortious injury in the nature of an invasion of Plaintiff's privacy rights in this Commonwealth, either by their acts in this Commonwealth or, alternatively, by acts outside the Commonwealth while regularly doing or soliciting business or engaging in a persistent course of conduct and deriving substantial revenue from goods used or consumed or services rendered in the Commonwealth.

14. Personal jurisdiction may be exercised over Defendants pursuant to Virginia Code § 8.01-328.1.A.1, A.2, A.3, and A.4.

15. At all times pertinent, Defendants were and are engaged in interstate commerce, and Defendants used and are using instrumentalities of interstate commerce, including telephone lines, satellites, cell phone towers, and the mail, in the course of their activities set forth herein.

### IV.  GENERAL OVERVIEW OF THE TCPA.

16. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

17. The TCPA regulates, among other things, the use of automated telephone dialing systems or "autodialers" and the use of artificial or prerecorded voices in telephone calls, both as to telemarketing and non-telemarketing calls. Specifically, the plain language of § 227(b)(1)(A) prohibits the use of autodialers or artificial or prerecorded voices to make any non-emergency call to a cellular or wireless phone number in the absence of prior express consent of the called party.

18. The TCPA also applies to text messages like those Defendants sent to Plaintiff's cellular phone.

19. According to findings by the Federal Communications Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, calls made using an autodialer or an artificial or prerecorded voice are a greater nuisance and invasion of privacy than live calls or messages, and such calls or messages can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls or messages whether they pay in advance or after the minutes or message amounts are used.

20. Importantly, calls or messages to cellular phones are exempted from the TCPA if they are made with the express consent of the receiving party.

21. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendants to demonstrate that Plaintiff and the other members of the class which Plaintiff seeks to represent provided prior express consent within the meaning of the Act.

22. Even if Defendants contracted with third-party vendors to send the messages to Plaintiff and the Class, the applicable TCPA authorities have concluded that agency principles permit holding non-messaging entities like Defendants vicariously liable for messages third parties send on their behalf.

### V. FACTS AS TO NAMED PLAINTIFF.

23. Plaintiff is a native of El Salvador who lawfully resides in Virginia.

24. On March 15, 2016, to communicate with his sister in El Salvador, Plaintiff purchased long distance minutes issued by Defendants from a retailer in Virginia. When Plaintiff purchased the minutes, the retailer in Defendants' network downloaded the Boss Revolution Mobile Application ("the App") onto Plaintiff's cell phone that allowed his sister to call him at no charge to her.

25. Defendants' retailers download the App for thousands of consumers and uploads the prepaid minutes for the purpose permitting family and friends in foreign countries to communicate with individuals in the United States at no charge to them.

26. The App lets a consumer prepay for a certain number of calling minutes, and consumers may "reload" the card by paying Defendants a fee to add calling capacity as the previously paid capacity approaches zero or is exhausted.

27. The individual in the foreign country may make as many calls to the United States as the prepaid amount allows.

28. Plaintiff used the App to receive calls from his sister while living in Virginia.

29. As the dollar value on Plaintiff's card was exhausted, Defendants send text messages to Plaintiff encouraging him to purchase more minutes. Defendants sent these text

messages to the Plaintiff on December 10, 2016, twice on December 18, 2016, on December 30, 2016, on December 31, 2016, on January 13, 2016.

30. On January 24, 2017, Plaintiff replied to the text messages and stated: "Stop texting me."

31. Defendants continued to send text messages on January 25, 2017, January 26, 2017, January 30, 2017, January 31, 2017, February 20, 2017, February 14, 2017, February 19, 2017, February 26, 2017 and February 28, 2017.

32. Each of these text messages falsely claimed that his sister from El Salvador was attempting to contact Plaintiff, implying an urgent need to purchase additional minutes.

33. After he received such texts, Plaintiff contacted his sister and learned that she was not attempting to contact Plaintiff using the prepaid minutes, confirming that Defendants' text messages were false.

34. Defendants used an autodialer to send these text messages to Plaintiff, and used an autodialer to send similar false text messages to members of the Class described below.

35. Plaintiff and members of the Class never provided their express consent to receive such unsolicited marketing messages from Defendants on their cellular phones.

36. Plaintiff did not personally download the App, as Defendants' retailers affiliates were charged with downloading the App, nor did he ever consent to receive text messages in any way. None of the texts from Defendants to Plaintiff's cell phone number were made with Plaintiff's prior express consent.

37. After Plaintiff replied to the text messages with his express desire that Defendants cease messaging him, Defendants did not.

6

38. The cell phone in question and the cell phone number to which Defendants sent the unsolicited text messages belonged to Plaintiff.

39. Each of the texts by Defendants to Plaintiff's cell phone number were made using an automatic telephone dialing system as defined by the TCPA in 47 U.S.C. § 227(a)(l) (hereinafter "autodialer"), and as subsequently defined and applied by the FCC. By using such equipment, Defendants were able to send texts to the wireless telephone numbers of the members of the Class which Plaintiff seeks to represent automatically without human intervention.

40. None of the texts from Defendants to Plaintiff's cell phone number were made for an emergency purpose.

41. Each of the texts from Defendants to Plaintiff's cell phone number was a "telephone solicitation" in that each call was initiated for the purpose of encouraging the purchase or rental of Defendants' goods or services, specifically the purchase of additional minutes of Defendants' international calling service.

42. Because Defendants' text messages were sent to Plaintiff's and Class Members' cellular telephones rather than landline telephones, Defendants cannot avail themselves of the exception to TCPA application for calls made pursuant to an established business relationship in 47 C.F.R. § 64.1200(f)(5).

43. Plaintiff is entitled to recover statutory damages and obtain injunctive relief as concerns Defendants' autodialed texts as provided in 47 U.S.C. § 227(b)(3).

      **VI.**    **CLAIMS FOR RELIEF.**

### COUNT I
**Telephone Consumer Protection Act, 47 U.S.C. §§ 227(b)(l)(A)(iii) and 227(b)(3)**
**CLASS CLAIM**

44. Plaintiff realleges and incorporates paragraphs 1 through 43 as though fully set forth herein.

45. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for himself and on behalf of a class ("the Autodialed Class") of similarly situated individuals initially defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who were the recipients of one or more text messages not for emergency purposes to their wireless phone numbers; (b) made by or on behalf of Defendants; (c) using an automatic telephone dialing system as defined by the TCPA and as subsequently defined and applied by the FCC; (d) within four years preceding the filing of this action and during its pendency. Excluded from the class definition are any employees, officers, directors of Defendant, and attorneys appearing in this case, and any judge assigned to hear this action.

46. Plaintiff also alleges a subclass ("the Revocation Class") on behalf of himself and other similarly situated individuals initially defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who were the recipients of one or more text messages not for emergency purposes to their wireless phone numbers; (b) made by or on behalf of Defendants; (c) using an automatic telephone dialing system as defined by the TCPA and as subsequently defined and applied by the FCC; (d) within four years preceding the filing of this action and during its pendency; (e) after they requested that the Defendants stop texting them. Excluded from the class definition are any employees, officers, directors of Defendant, and attorneys appearing in this case, and any judge assigned to hear this action.

47. **Numerosity.** FED. R. CIV. P. 23(a)(1). Upon information and belief, Plaintiff alleges that the members of the Class are so numerous that joinder of all is impractical. The names and addresses of the Class Members are identifiable through documents maintained by Defendants, and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

48. **Existence and Predominance of Common Questions of Law and Fact.** FED. R. CIV. P. 23(a)(2). Common questions of law and fact exist as to all Class Members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things:

(a) Whether the texts sent by or on behalf of Defendants to the wireless phone numbers of the Class Members were made using an autodialer;

(b) Whether the texts sent by or on behalf of Defendants to the wireless phone numbers of the Class Members were made for emergency purposes;

(c) Whether the Class Members provided prior express consent to Defendants to send or have sent on their behalf each of the text messages to their wireless phone numbers using an autodialer;

(d) Whether the Subclass Members ever expressly revoked consent to Defendants and Defendants continued to send text messages:

(e) Whether Defendant's conduct violated 47 U.S.C. § 227(b)(1)(A);

(f) Whether Defendant willfully or knowingly violated 47 U.S.C. § 227(b)(1)(A);

(g) Whether Plaintiff and the Class Members are entitled to a permanent injunction enjoining Defendants from sending or having sent on its behalf texts to wireless phone numbers using an autodialer without the prior express consent of the receiving party.

49. **Typicality.** FED. R. CIV. P. 23(a)(3). Plaintiff's claims are typical of the claims of each Class Member. Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the Class.

50. **Adequacy.** FED. R. CIV. P. 23(a)(4). Plaintiff is an adequate representative of the Class because his interests coincide with, and are not antagonistic to, the interests of the members of the Class he seeks to represent; he has retained counsel competent and experienced in such litigation; and he intends to prosecute this action vigorously. Plaintiff and his Counsel will fairly and adequately protect the interests of members of the Class.

51. **Superiority.** FED. R. CIV. P. 23(b)(3) Questions of law and fact common to the Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Liability will be determined based on a common set of facts and legal theories. Willfulness will be determined based on Defendants' conduct and knowledge, not upon the effect of Defendants' conduct on the Class Members. The statutory damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them, as the TCPA has no attorneys' fee shifting provision. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

52. Class certification is appropriate because Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class Members. FED. R. CIV. P. 23(b)(2).

53. By virtue of the foregoing, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) as to Plaintiff and the members of the Class by sending text messages, on one or more occasions, to their wireless numbers using an automatic telephone dialing system without their prior express consent, or alternatively by sending such texts after any prior express consent was revoked.

54. Pursuant to 47 U.S.C. § 227(b)(3), Plaintiff and each Class Member is entitled to recover from Defendants $500 in statutory damages for each such violation. In the event that Defendant is found to have knowingly or willfully violated the TCPA, this Court may, in its discretion, increase the amount of statutory damages to not more than $1,500 for each such violation.

55. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff, on behalf of himself and the Class Members, also seeks injunctive relief prohibiting Defendants' violations of the TCPA in the future.

### COUNT II
### Virginia Consumer Protection Act, Va. Code § 59.1-196
### INDIVIDUAL CLAIMS

56. Plaintiff realleges and incorporates paragraphs 1 through 56 as though fully set forth herein.

57. Plaintiff entered into a consumer transaction with the Defendants as defined in Va. Code § 59.1-198.

58. Defendants were a supplier of consumer goods and services as defined in Va. Code § 59.1-198.

59. Defendants violated the VCPA when it used deception and made a false statement in its text messages that Plaintiff's sister was attempting to reach him, but was unable to because he did not have funds remaining in his account.

60. Defendants made these false and deceptive statements in each of the fifteen text messages that Plaintiff received.

61. Defendants intended that Plaintiff rely on these statements, and Plaintiff did rely on these statements.

62. Each text message separately violates the VCPA, Va. Code § 59.1-200(A)(14).

63. The Defendants violations were willful, entitling the Plaintiff to recover $1,000.00 per violation, pursuant to § 59.1-204.

## VII.  PRAYER FOR RELIEF.

64. WHEREFORE, Plaintiff, on behalf of himself and as representative of all other persons similarly situated, prays for judgment against Defendants, jointly and severally, awarding relief as follows:

    a. Certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class;

    b. Statutory damages as provided for under 47 U.S.C. § 227(b)(3), trebled as may be appropriate for the Class and Subclass;

    c. A permanent injunction restraining Defendants from sending or having sent on their behalf any additional non-emergency texts to wireless phones using an automatic telephone dialing system without first obtaining the prior express consent of the receiving party;

  d.  Statutory damages for Plaintiff's individual claim for violations of the VCPA;

  e.  Pre-judgment interest from the date of filing this suit;

  f.  A reasonable attorneys' fee and all cost of this proceeding; and

  g.  All general, special and equitable relief to which Plaintiff and the members of the Classes are entitled by law.

**Trial by Jury is Demanded**.

      **OSCAR REYES** *on behalf of himself and on behalf of all other similarly situated individuals*

      /s/ *Kristi C. Kelly*
Kristi C. Kelly, VSB #72791
Andrew Guzzo, VSB #82170
KELLY & CRANDALL, PLC
3925 Chain Bridge Rd., Suite 202
Fairfax, Virginia 22030
(703) 424-7576 Telephone
(703) 591-9285 - Facsimile
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com

Leonard A. Bennett, VSB #37523
Craig C. Marchiando, VSB #89736
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News VA 23601
Telephone – (757) 930-3660
Facsimile – (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

Matthew T. Sutter, Esq., #66741
616 North Washington Street
Alexandria, VA 22314
Telephone: 703-836-9030
Facsimile: 703-683-1543
Email: sutter@oldtownlawyers.com
*Attorneys for Plaintiff*